El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
Este caso nos permite resolver, en primer lugar, si un recurso de impugnación del laudo arbitral fue notificado debidamente a las partes en el pleito. Así sabremos si el Tribunal de Primera Instancia tenía jurisdicción para emi-tir una sentencia. En segundo lugar, analizaremos si los *319 años de servicio prestados como maestro mediante un con-trato transitorio en el Departamento de Educación deben honrarse como años de experiencia al considerar la elegi-bilidad para un aumento de salario.
Evaluada la controversia, resolvemos que el Tribunal de Primera Instancia actuó con jurisdicción al momento de emitir la sentencia. Asimismo, concluimos que nada en la Ley Núm. 34 de 13 de junio de 1966 (18 L.P.R.A. sees. 308 n., 308k y 309 n.-309j) impide que se computen los años de experiencia como maestro por contrato transitorio para propósitos de un aumento de salario una vez se obtiene un nombramiento de carrera. Por todo lo anterior, revocamos al Tribunal de Apelaciones.
I
El peticionario Ricardo Díaz Maldonado comenzó a tra-bajar como maestro de Educación Física en el Departa-mento de Educación (antes Departamento de Instrucción Pública) en agosto de 1998 por contrato y con un nombra-miento clasificado como transitorio elegible. Es decir, es-taba “nombrado por un término fijo en una plaza para la cual pose[ía] certificado regular de maestro para la catego-ría correspondiente.” Reglamento de Personal Docente del Departamento de Instrucción Pública, Reglamento Núm. 3083, Departamento de Instrucción Pública, 21 de marzo de 1984, pág. 109. En mayo de 1999 obtuvo el grado de maestría en Educación con concentración en Educación Especial, y otra especialidad en Currículo y Enseñanza. Ese mismo año, efectivo el 2 de agosto, se le concedió un nom-bramiento como maestro de carrera, con estatus probatorio y un salario mensual de $1,570. Ese era el salario que co-rrespondía a los maestros que poseían una maestría, pero que no tenían experiencia.
Al ubicar al peticionario Díaz Maldonado en la escala salarial que proveía la Ley Núm. 34, supra, el Departa- *320 mentó de Educación no consideró el año en que este trabajó como maestro transitorio elegible. Ese año de experiencia habría hecho una diferencia de $25 adicionales por mes, para un salario total de $1,595 mensuales.
A través de los canales de quejas y agravios que proveía el convenio colectivo vigente para esa fecha, el señor Díaz Maldonado reclamó que se considerara el año en que tra-bajó como maestro transitorio elegible para ubicarlo en la escala superior. El 22 de febrero de 2008 la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP) emitió un laudo de arbitraje que concedió la petición del maestro. Le reconoció como acreedor del salario mensual de $1,595, retroactivo al 1 de mayo de 2000.
Inconforme, el 13 de marzo de 2008 el Departamento de Educación impugnó el laudo de arbitraje en el Tribunal de Primera Instancia. Ese escrito no se notificó a la Federa-ción de Maestros de Puerto Rico (FMPR), que figuraba como representante exclusivo del peticionario al momento de iniciar la reclamación, pero que luego quedó descertifi-cada el 8 de enero de 2008 por una orden de la CRTSP. Por esos hechos, la FMPR presentó ante el Tribunal de Apela-ciones un recurso de revisión de la determinación de la CRTSP, acompañada de una solicitud en auxilio de jurisdicción. El foro apelativo intermedio, al amparo de las Reglas 61(A)(1) y 79 de su Reglamento, 4 L.P.R.A. Ap. XXII-B, paralizó temporalmente la decisión de la CRTSP hasta el 22 de febrero de 2008, fecha límite que se le con-cedió al Departamento de Educación para presentar su alegato. Finalmente, el 29 de febrero de 2008 el Tribunal de Apelaciones dictó sentencia en la que confirmó la deser-tificación de la FMPR (Caso Núm. KLRA200800115).
El 14 de mayo de 2008 el maestro Díaz Maldonado y la FMPR impugnaron la jurisdicción del tribunal en su caso. Alegaron una falta de notificación adecuada por parte del Departamento de Educación, por lo que solicitaron la des-estimación de la petición de impugnación de laudo. En la *321 alternativa, pidieron que se les concediera un término de 20 días para responder a la impugnación del laudo.
El Tribunal de Primera Instancia, sin conceder el tiempo solicitado para responder ni emitir una orden o no-tificación al respecto, revocó el laudo de arbitraje el 6 de abril de 2009. Ese foro entendió que la controversia no fue resuelta conforme a derecho. Razonó que cuando el señor Díaz Maldonado “recibió su nombramiento en el puesto de carrera con status probatorio, no se configuró un ascenso. Esto es así debido a que el Recurrido tenía un año de ex-periencia, la cual fue adquirida en un puesto transitorio.” (Enfasis suprimido.) Apéndice del Certiorari, pág. 42. Aña-dió que
[e]l Recurrido ingresó al servicio público al recibir su nombra-miento en un puesto de carrera el 2 de agosto de 1999. Al ser nombrado a dicho puesto de carrera, se le asign[ó] al Recu-rrido el sueldo correspondiente al maestro con grado de maestría. Desde ese momento en que comienza a ocupar el puesto de carrera, es que comienza el término para contar la experiencia del Recurrido. El año que el Recurrido ocupó antes de ser nombrado a su puesto de carrera fue en un puesto tran-sitorio, el cual fue justificado por la necesidad del puesto du-rante el año que el Recurrido lo ocupaba. Apéndice del Certio-rari, pág. 44.
Inconforme, el peticionario Díaz Maldonado recurrió ante el Tribunal de Apelaciones, que denegó el certiorari el 26 de octubre de 2009. En su resolución, el foro apelativo intermedio repitió los mismos argumentos del Tribunal de Primera Instancia para concluir que “el año de servicio prestado por el peticionario [Díaz Maldonado] como em-pleado transitorio se justificó por la necesidad del servicio, y su nombramiento al puesto de carrera no constituyó un ascenso que pudiese justificar un sueldo mayor al corres-pondiente, para un maestro con salario básico y grado de maestría.” Apéndice del recurso, pág. 17.
Insatisfecho nuevamente, el maestro Díaz Maldonado recurre ante nos. Repite sus planteamientos de que el Tri *322 bunal de Primera Instancia actuó sin jurisdicción al aten-der la impugnación de un laudo que no se notificó a todas las partes involucradas en el caso a la fecha de su presentación. Además, aduce que el tribunal excedió su discreción al revocar el laudo de arbitraje que le reconoció una acreencia de $25 mensuales adicionales de salario, conforme a su interpretación de la Ley Núm. 34, supra. El 7 de mayo de 2010 expedimos el auto de certiorari.
II
A. La Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico (Ley de Relaciones del Trabajo), Ley Núm. 45 de 25 de febrero de 1998 (3 L.P.R.A. sec. 1451 y ss.) creó la CRTSP. Este organismo tiene entre sus funciones
[i]nterpretar, aplicar y hacer cumplir las disposiciones de este capítulo en todo lo relativo a los procesos de organización, certificación, descertificación de organizaciones sindicales; en los procedimientos relacionados con la conciliación y arbitraje de negociaciones de convenios colectivos, en los procedimien-tos relacionados con prácticas ilícitas .... Art. 11, Sec. 11.15 (3 L.P.R.A. sec. 1452t(a).
La Sec. 10.1 del Art. 10 de la Ley de Relaciones del Trabajo, 3 L.P.R.A. sec. 1452d, especifica que el mecanismo de revisión de las órdenes y resoluciones finales de la CRTSP será la presentación de un recurso de revisión ante el Tribunal de Apelaciones. Este recurso se atenderá discrecionalmente.
El término para esa revisión será el que dispone la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 y ss.). En lo pertinente, la Sec. 4.6 de la L.P.A.U., según enmendada, 3 L.P.R.A. sec. 2176, séñala que
[e]l Tribunal de Apelaciones revisará como cuestión de dere-cho las decisiones, órdenes y resoluciones finales de organis- *323 mos o agencias administrativas. La mera presentación del re-curso no paralizará el trámite en el organismo o agencia administrativa, a menos que el Tribunal así lo determine.
El procedimiento a seguir para los recursos de revisión será de acuerdo con lo establecido en el Reglamento del Tribunal de Apelaciones aprobado por el Tribunal Supremo. ...
Términos iguales se expresan en la Regla 61 del Regla-mento del Tribunal de Apelaciones, 4 L.RR.A. Ap. XXII-B, sobre los efectos de la presentación de un recurso de revi-sión administrativa. A solicitud de parte, se podrá emitir una orden para paralizar los efectos de una sentencia.
B. El peticionario Díaz Maldonado esboza que el Tribunal de Primera Instancia estaba impedido de ver el re-curso de impugnación del laudo de la CRTSP porque el Departamento de Educación no notificó a todas las partes, específicamente, a la FMPR. No tiene razón.
La organización sindical formó parte del caso ante la Comisión, pero quedó descertificada como representante exclusivo de los maestros de la agencia el 8 de enero de 2008. La orden de la CRTSP que descertificó a la Federa-ción establecía expresamente, entre otras cosas, que la or-ganización tenía que cesar inmediatamente de representar a los maestros del sistema público de enseñanza. Esa or-den se emitió el 8 de enero de 2008 y se enmendó el 1 de febrero de 2008. Conviene recordar que esa orden es una determinación administrativa, sujeta a revisión judicial en los términos que dispone la L.P.A.U., según la Ley de Re-laciones del Trabajo del Servicio Público.
Según la Regla 61 del Reglamento del Tribunal de Apelaciones, supra, y la Sec. 4.3 de la L.P.A.U., supra, las órdenes sujetas a revisión administrativa no quedan paralizadas con la mera presentación de un recurso, a menos que el foro apelativo disponga otra cosa. Así pues, la orden que descertificó a la FMPR fue efectiva desde que se emitió.
Si bien es cierto que el Tribunal de Apelaciones emitió una orden de suspensión de los efectos de la orden admi- *324 nistrativa de descertificación, esa orden judicial fue efec-tiva solo desde el 11 hasta el 22 de febrero de 2008. El laudo de la CRTSP se publicó el 22 de febrero de 2008 y se notificó a todas las partes.
Fue la impugnación del laudo en el caso del maestro Díaz Maldonado ante el Tribunal de Primera Instancia, presentada por el Departamento de Educación el 13 de marzo de 2008, lo que se dejó de notificar a la FMPR. Para esa fecha, la orden de paralización del Tribunal de Apela-ciones en el caso de la descertificación ya no estaba vi-gente, así que la descertificación de la FMPR estaba en plena efectividad.
El señor Díaz Maldonado plantea que se debió notificar a la FMPR porque la descertificación era final pero no firme, pues se encontraba en los canales apelativos. Alega que la FMPR debió ser parte en el pleito hasta el 27 de junio de 2008, fecha cuando la descertificación advino a ser una determinación final y firme, tras la disposición del caso de la descertificación ante este Tribunal.
No nos convence su posición. Reiteramos que en los ca-sos de decisiones administrativas, estas son efectivas desde que se emiten y sus efectos se paralizan solo por orden de los tribunales. La orden de paralización que emi-tió el Tribunal de Apelaciones en el caso de la descertifica-ción no estaba vigente cuando se impugnó el laudo en el caso del maestro Díaz Maldonado. Por ello, el Departa-mento de Educación no estaba obligado a notificar a la FMPR la impugnación del laudo en el caso del señor Díaz Maldonado porque esa federación había dejado de ser parte.
Aclarada la jurisdicción del Tribunal de Primera Instan-cia para emitir la sentencia, pasemos entonces a analizar la segunda controversia que nos ocupa.
*325 III
Hemos expresado en reiteradas ocasiones que “[e]n Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por lo tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral.” C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 448-449 (2007). Véanse, además: HIETel v. PRTC, 182 D.P.R. 451 (2011); S.L.G. Méndez-Acevedo v. Nieves Rivera, 179 D.P.R. 359, 368 (2010); U.G.T. v. Corp. Difusión Púb., 168 D.P.R. 674, 682 (2006); Vélez v. Serv. Legales de P.R., Inc., 144 D.P.R. 673, 682 (1998); Martínez Rodríguez v. A.E.E., 133 D.P.R. 986, 995 (1993). Por ello, “cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia”. C.F.S.E. v. Unión de Médicos, supra, pág. 449. Véanse, además: HIETel v. PRTC, supra; López v. Destilería Serrallés, 90 D.P.R. 245, 256 (1964). Por ello, “un laudo basado en una sumisión voluntaria está sujeto a la revisión judicial sólo si las partes convienen que la controversia sometida al árbitro sea resuelta conforme a derecho”. U.G.T. v. Corp. Difusión Púb., supra, pág. 682. Véanse, además: Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347, 353 (1999); J.R.T. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 68 (1987); Junta Relaciones del Trabajo v. N.Y. & P.R. S/S Co., 69 D.P.R. 782, 801-802 (1949).
Así pues, en atención a esa deferencia, hemos establecido que la revisión de un laudo se circunscribirá, cuando no se ha especificado que sea conforme a derecho, “a la determinación de la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no re- *326 suelve todos los asuntos en controversia”. C.F.S.E. v. Unión de Médicos, supra, pág. 449. Véase, además, Aquino González v. A.E.E.L.A., 182 D.P.R. 1 (2011).
Ahora bien, cuando las partes acuerdan que el laudo se haga conforme a derecho, la facultad revisora de los tribunales es más amplia. Por ello, “podrán corregir errores jurídicos en atención al derecho aplicable. En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de las decisiones administrativas”. C.F.S.E. v. Unión de Médicos, supra, pág. 449. Véanse, además: Condado Plaza v. Asoc. Emp. Casinos P.R., supra, pág. 353; Rivera v. Dir. Adra. Trib., 144 D.P.R. 808, 821-822 (1998).
Por consiguiente, cuando en un laudo se determina que el árbitro deberá resolver conforme a derecho, “el árbitro no puede ignorar las normas de [d]erecho sustantivo en el campo del derecho laboral y debe resolver las controversias de acuerdo con las doctrinas legales prevalecientes”. C.F.S.E. v. Unión de Médicos, supra, pág. 449. Sin embargo, si en el convenio de arbitraje nada se dice en cuanto a que deberá resolverse conforme a derecho, “los árbitros pueden declarar cuál es la ley, haciendo caso omiso de las reglas de derecho sustantivo”. Id., págs. 449-450. Véase, además, Rivera v. Samaritano & Co., Inc., 108 D.P.R. 604, 609 (1979). Es decir, la facultad del árbitro para diseñar remedios sería amplia, “siempre y cuando tales remedios se derivaran de la esencia del convenio colec-tivo y del acuerdo de sumisión de acuerdo con el cual se actuaba”. (Énfasis en el original.) C.O.P.R. v. S.P.U., 181 D.P.R. 299, 347 (2011). Por eso, “cuando un laudo está con-dicionado a emitirse [conforme a derecho], el árbitro debe velar celosamente por que se cumplan las reglas jurídicas vigentes en nuestro ordenamiento legal y debe rendir su decisión según las doctrinas legales prevalecientes”. Id., págs. 345-346. Así pues, “[u]n laudo conforme a derecho confiere a las partes la certidumbre de que el resultado *327 arbitral estará estrictamente aferrado a los límites de la ley, y que no se concederá un remedio más allá del provisto por nuestro andamiaje jurídico.” (Enfasis en el original.) Id., pág. 347. Por ello, “[c]onceder amplio margen a un ár-bitro para que diseñe remedios cuando el laudo está condi-cionado a emitirse conforme a derecho y las partes nada han dispuesto sobre los poderes del árbitro, socava princi-pios básicos de derecho contractual y lesiona el acuerdo de voluntades establecido en el convenio colectivo”. (Enfasis en el original.) Id., pág. 346.
No obstante, debe quedar claro que
... el tribunal de instancia no debe inclinarse fácilmente a decretar la nulidad del laudo a menos que efectivamente el mismo no haya resuelto la controversia con arreglo a derecho, según lo pactaran las partes. ... Debe tenerse presente que una discrepancia de criterio con el laudo no justifica la inter-vención judicial pues destruye los propósitos fundamentales del arbitraje de resolver las controversias rápidamente, sin los costos y demoras del proceso judicial. Rivera v. Samaritano Co., 108 D.P.R. 604, supra, pág. 609.
En el caso ante nos, las partes acordaron que el laudo de arbitraje se emitiera conforme a derecho. Por ende, pro-cede la revisión del laudo en toda su extensión.
IV
De entrada, es necesario puntualizar que cuando se sus-citó la controversia, al Departamento de Educación(1) no le aplicaba la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, según enmen-dada, 3 L.P.R.A. ant. sec. 1301 y ss. El departamento fue designado Administrador Individual por la Ley Núm. 49 de *328 7 de junio de 1977 (3 L.P.R.A. secs. 1333-1338). En virtud de lo anterior, el Departamento de Instrucción Pública pro-mulgó el Reglamento de Personal Docente del Departa-mento de Instrucción Pública (Reglamento de Personal Docente). Este respondió al
... propósito de cumplir [con] el mandato legal que dispon [ía] que los Administradores Individuales deb[ían] adoptar para sí un reglamento para las áreas esenciales del principio de mérito y otras disposiciones necesarias relativas a la Administración de personal, todo ello de conformidad con las disposiciones de las Secciones 5.7 y 5.13 de la referida Ley Número 5. Reglamento de Personal Docente, supra, pág. 1.
Sin embargo, con la aprobación de la Ley para la Admi-nistración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184-2004, según enmendada, 3 L.P.R.A. sec. 1461 y ss., el De-partamento de Educación dejó de ser un Administrador Individual y volvió a formar parte del sistema de recursos humanos del servicio público del Gobierno de Puerto Rico. No obstante, al momento de suscitarse la controversia de este caso, el Departamento de Educación era un Adminis-trador Individual que se regía por el Reglamento de Personal Docente, para todo lo relacionado con el principio de mérito y la administración de personal.
Precisamente, el Art. 12 del Reglamento de Personal Docente, supra, pág. 69, disponía que “[e]l aspecto retributivo del personal docente del Departamento de Instrucción Pública se regir[ía] por las disposiciones contenidas en leyes especiales aplicables al efecto y los procedimientos internos aprobados”. (Enfasis suplido.) Por ello, procedemos a resolver esta controversia conforme a los principios de la ley especial aplicable: la Ley Núm. 34, supra.
A. La Ley Núm. 34, supra, respondió “a una profunda inquietud gubernamental por elevar la remune- *329 ración de los maestros de conformidad con la realidad eco-nómica del momento y a tono con la aportación que estos servidores públicos han prestado al desarrollo económico de Puerto Rico así como a otros aspectos de nuestra vida colectiva”. Informe de la Comisión de Instrucción y Cultura de la Cámara de Representantes sobre el P. de la C. 438, 5ta Asamblea Legislativa, 2da Sesión Ordinaria, 21 de abril de 1966, pág. 3.
Luego de un estudio de la remuneración de los maestros en ese entonces, se encontró “(1) que el sueldo que recib[ían] los maestros afecta [ba] en proporción directa la eficiencia del funcionamiento del sistema y la calidad del producto educativo; [y] (2) que exist[ía] un desbalance en-tre los sueldos de los maestros y de los otros empleados públicos en posiciones de responsabilidad y preparación similares”. Id., pág. 3. Conforme a lo anterior, se creó la política de sueldos docentes dentro de tres normas básicas:
1) equiparar el sueldo básico de los maestros al de emplea-dos del Gobierno de preparación académica y responsabilidad comparable;
2) compensar la excelencia desarrollada por la experiencia en la enseñanza y aumentar los índices de retención en el servicio de los maestros; y
3) estimular a los maestros a que logren la más alta prepa-ración académica, estableciendo diferencias razonables en los sueldos básicos y en la compensación por experiencia, basados en la preparación académica del maestro. Informe de la Comi-sión de Hacienda de la Cámara de Representantes sobre el P. de la C. 438, 5ta Asamblea Legislativa, 2da Sesión Ordinaria, 27 de abril de 1966, pág. 3.
Con esta medida, el gobierno realizó un esfuerzo singular al dotar al país de un sistema educativo que facilitara a todos la oportunidad de obtener una mejor educación. Id., pág. 4. Esa encomienda tendría más éxito, evidentemente, si se remuneraba al personal docente de acuerdo con su preparación académica. De esta forma, se les “indue [ía] a alcanzar niveles superiores de preparación académica y [a] retenerlos en el servicio activo”. Id., pág. 5.
*330 Así pues, el legislador creó una fórmula de aumentos en el sueldo de los maestros que dependía de su preparación académica y de los años de servicio. Esa fórmula se en-cuentra en el Art. 4 de la Ley Núm. 34 (18 L.P.R.A. sec. 309c). Ese artículo dispone:
La retribución de cada maestro se aumentará al siguiente tipo intermedio en la escala correspondiente al terminar un año de servicio hasta que alcance el sueldo máximo de la escala. Por “año de servicio” se entenderá cualquier período de nueve (9) meses, dentro de un año escolar en que el maestro haya estado bajo contrato o nombramiento, y la acumulación de cualquier perí odo de diez (10) meses de servicios prestados en diferentes años escolares; entendiéndose, que para los pro-pósitos de las sees. 309 a 309j de este título, el año escolar comprende los meses escolares de agosto a julio subsiguiente. Los aumentos por razón de años de servicio serán efectivos al empezar el año económico y en el caso de maestros que rein-gresan al servicio, en el mes en que el maestro empiece a tra-bajar durante el año económico. (Énfasis suplido.(2)
Como vemos, se le aumentará la retribución al siguiente tipo intermedio en la escala correspondiente a todo maestro que al terminar un año de servicio esté bajo contrato o nombramiento. Así pues, primero es necesario analizar quién es el maestro cobijado por la Ley Núm. 34, supra.
*331 El Art. 10 de la Ley Núm. 34 (18 L.P.R.A sec. 309i(b) y (c)), define como maestro de instrucción pública a “todo el personal docente, técnico y de supervisión del sistema escolar ...”. La definición incluye también a “[l]os maestros o principales contratados como tales por otros departamentos o agencias del Estado Libre Asociado de Puerto Rico ...”. Id. Sin embargo, quedan excluidos de esta definición “los maestros de escuelas nocturnas y los profesores de la Universidad de Puerto Rico,” así como el “personal de oficina”. Id.
Ahora bien, el Art. 4, supra, reduce el año de servicio a cualquier periodo de nueve meses en un año escolar en el que un maestro haya estado bajo contrato o nombramiento. El año escolar comprende los meses de agosto a julio. Id. También, se considerará un año de ser-vicio la acumulación de cualquier periodo de diez meses de servicios prestados en diferentes años escolares. Id.
Finalmente, el referido Art. 4 menciona que le corres-ponderá el aumento a todo maestro elegible que esté “bajo contrato o nombramiento”. La Ley Núm. 34, supra, no brinda una definición de esos términos. Sin embargo, el Art. 18(35) del Reglamento de Personal Docente, supra, pág. 109, definía “nombramiento” como “la designación ofi-cial de una persona para realizar determinadas funciones”. Asimismo, definía al “maestro transitorio elegible” como “aquél nombrado por un término fijo en una plaza para la cual posee certificado regular de maestro para la categoría correspondiente”. Id., Art. 18(34).
V
Sin lugar a dudas, el señor Díaz Maldonado disfrutó de un nombramiento transitorio durante el año anterior a su nombramiento como maestro de carrera con estatus probatorio. Sobre ello coinciden ambas partes en el pleito. Durante el año escolar 1998-1999, estudió una maestría *332 en Educación con concentración en Educación Especial. Sin embargo, al nombrársele en el puesto de carrera en 1999, ya con su maestría, se le adjudicó un sueldo que co-rrespondía al de un maestro con maestría pero sin experiencia. El árbitro resolvió que, conforme a la Ley Núm. 34, supra, correspondía al peticionario Díaz Maído-nado el sueldo de un maestro con maestría y un año de experiencia. Sin embargo, tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones, acogieron la postura de la agencia, que entendía que un año de servicio prestado como maestro transitorio no cuenta para propósi-tos de un aumento por años de servicios. Al concluir de esa forma, erraron ambos foros.
En primer lugar, el maestro Díaz Maldonado está dentro de la definición de “maestro” del Art. 10 de la Ley Núm. 34, supra. Es parte del personal docente del sistema escolar. No está incluido entre las excepciones del artículo. Por ende, tenemos que concluir que la categoría de “maestro transito-rio elegible” definida en el referido Art. 18(34) del Regla-mento de Personal Docente está comprendida dentro de la categoría general de “Maestro de Instrucción Pública” que se menciona en el Art. 10 de la Ley Núm. 34, supra. Se trata de dos disposiciones sobre el mismo asunto que “deben ser tra-tadas como un todo armónico, leyéndolas en conjunto, no interpretando aisladamente sus disposiciones”. Torres Santiago v. Mun. de Coamo, 170 D.P.R. 541, 560 (2007). Si el legislador hubiera querido excluir a los maestros transito-rios del aumento por años de servicio, lo habría hecho cons-tar palmariamente. Así lo hizo con los profesores de escuelas nocturnas, los profesores de la Universidad de Puerto Rico y el personal de oficina.
En segundo lugar, el señor Díaz Maldonado laboró como maestro transitorio durante el año escolar 1998-1999. Es decir, empezó en el sistema educativo en agosto de 1998 y durante ese año, hasta el 31 de mayo de 1999, ejerció sus funciones como maestro transitorio elegible. Por ende, el *333 señor Díaz Maldonado laboró como maestro durante los nueve meses que constituyen un año escolar. Así pues, cumple con el segundo requisito que impone el Art. 4 de la Ley Núm. 34, supra.
En tercer y último lugar, el señor Díaz Maldonado laboró como maestro bajo contrato transitorio. El Tribunal de Ape-laciones no analizó directamente a qué se refería el legisla-dor al mencionar al maestro “bajo contrato o nombramiento” en el Art. 4 de la Ley Núm. 34, supra.. Por el contrario, ig-noró lo dispuesto en el Art. 12 del Reglamento de Personal Docente, supra, y resolvió la controversia al amparo de leyes que no aplicaban a los hechos. Específicamente, el foro ape-lativo intermedio utilizó el Art. 4 de la Ley Núm. 34, supra, y el Art. 6, Sec. 6.12 del Reglamento de Personal Docente, supra, la Ley de Retribución Uniforme, Ley Núm. 89 de 12 de julio de 1979 (3 L.P.R.A. sec. 760 y ss.), así como la juris-prudencia en cuanto a los nombramientos transitorios y de carrera en el contexto de la Ley de Personal de Servicio Público, supra, para concluir que “el año de servicio pres-tado por el peticionario como empleado transitorio se justi-ficó por la necesidad del servicio, y su nombramiento al puesto de carrera no constituyó un ascenso que pudiese jus-tificar un sueldo mayor al correspondiente, para un maestro con salario básico y grado de maestría”. Apéndice del Certio-rari, págs. 16-17. Esa conclusión es errada.
La educación de nuestro pueblo es de trascendental importancia para el desarrollo de nuestra sociedad. Los maestros y las maestras que componen el cuerpo docente del Departamento de Educación de Puerto Rico laboran a diario por el desarrollo intelectual, emocional y social de la niñez. Necesitamos profesionales del más alto calibre para ejercer tan importante labor. Por eso, el legislador concluyó que incentivar al profesorado por su preparación académica y experiencia repercute en un mejor funcionamiento laboral y en un deseo personal de superación.
*334 La Ley Núm. 34, supra, no distingue entre contratos transitorios y nombramientos probatorios o permanentes, para propósitos de los aumentos salariales a los maestros. Como se aprecia del texto de la ley, esta dispone únicamente que los empleados docentes bajo contrato o nombramiento recibirán un aumento de sueldo conforme a su preparación y años de servicio. La ley no exige que los años de servicio se presten en calidad de empleado regular. Recordemos que el Art. 4 de la Ley Núm. 34, supra, dispone que el aumento corresponderá a todo empleado docente elegible que haya estado trabajando por contrato o nombramiento. De ahí que un empleado docente elegible tiene derecho al aumento salarial, independientemente de si ha estado trabajando por contrato como empleado transitorio o si tiene un nombramiento regular. Concluir de otra forma frustraría el propósito del legislador de incentivar la educación de nuestros maestros al remunerarles conforme a su preparación académica y a su experiencia en el salón de clase.
Por todo lo anterior, concluimos que corresponde compu-tar al peticionario Díaz Maldonado el año de servicio que prestó como maestro por contrato transitorio. Así pues, procede decretar el pago y ajuste al salario del señor Díaz Maldonado correspondiente a $25 mensuales en concepto de ajuste en la escala salarial al sueldo básico de un maestro con un año de experiencia que posee el grado de maes-tría, desde agosto de 1999 al presente.
VI
Por los fundamentos expuestos, se dictará Sentencia para revocar la del Tribunal de Apelaciones y ordenar la restitución del Laudo de Arbitraje L-08-020.
La Jueza Asociada Señora Piol Matta concurrió sin opi-nión escrita. El Juez Asociado Señor Rivera García no interviene.

 En 1990 el Departamento de Instrucción Pública fue renombrado como De-partamento de Educación en virtud de la Ley de Reforma Escolar, Ley Núm. 68 de 28 de agosto de 1990.

 Para el personal docente del programa regular del Departamento de Educa-ción, el Art. 1 de la Ley Núm. 34 (18 L.P.R.A. see. 309) estableció la siguiente escala retributiva a partir de julio de 1996:
ESCALA DE SUELDOS QUE REGIRAN PARA EL PERSONAL DOCENTE DEL PROGRAMA REGULAR DE EDUCACION PUBLICA A PARTIR DE JULIO DE 1996:
TIPOS INTERMEDIOS
[[Image here]]